UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COMMUNITY WEST CREDIT UNION | § | CIVIL ACTION NO. 09-CV-1201 |
| Plaintiff, | § | |
| v. | § | **PLAINTIFF'S FIRST AMENDED COMPLAINT - CLASS ACTION** |
| HEARTLAND PAYMENT SYSTEMS, INC. | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

COMES NOW Plaintiff Community West Credit Union, through its attorneys, and for its Complaint against Defendant Heartland Payment Systems, Inc., alleges as follows:

## I.
## PARTIES

**A.   PLAINTIFF**

1.   Plaintiff Community West Credit Union ("Plaintiff" or "Community West") is, and at all times mentioned in this Complaint was, a financial cooperative headquartered, with its principal place of business, in Grand Rapids, Kent County, Michigan.

**B.   DEFENDANT**

2.   Defendant Heartland Payment Systems, Inc. ("Heartland") is a Delaware corporation with its principal place of business in New Jersey.

3.   Heartland can be served via its registered agent for service in Texas: Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

4.   Defendant was, at all relevant times, authorized to do business in the State of Texas and regularly transacts business in Texas.

5. Defendant realizes substantial revenue from its business operations in Texas.

## II.
## JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d) because there are members of the Class from states other than Delaware and New Jersey, and because the aggregate amount in controversy exceeds five million dollars.

7. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of jurisdiction and because the aggregate amount in controversy exceeds $75,000.

8. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in the Southern District of Texas. A significant portion of Heartland's operations and system at issue are located in Houston, Texas.

9. Moreover, *Watson v. Heartland Payment Systems, Inc.*, Civ. No. 4:09-cv-00325, is filed in this Court, and has been assigned to the Honorable Judge Lee Rosenthal. The *Watson* case involves many of the same issues as the present case, in that they both arise out of the same security breach in Heartland's systems.

## III.
## BACKGROUND

10. Heartland is a bank card payment processor to many small merchants in the United States, mostly restaurants and retailers. Heartland is one of the largest and fastest growing processors in the United States. Heartland processes payment card transactions

for about 250,000 merchants and handles an average of more than 100 million transactions per month and more than $80 billion in transactions a year.

11.    Heartland provides merchants with the ability to accept credit cards as payments, by connecting the merchants' card terminals with the card issuer to verify the transaction, and then moving the funds from the issuing bank to the merchant's bank account.

12.    In late January 2009, Heartland admitted that it had a massive security breach resulting in the compromise of up to 100 million credit card numbers. It is believed that someone broke into Heartland's systems, perhaps as early as May 2008, and implanted software that they used to steal card data. It is further believed that Heartland did not learn of the breach until 2009.

13.    As a result of this breach, confidential information regarding Plaintiffs' customers, and the credit card accounts Plaintiffs established for its customers were compromised. Accordingly, hundreds of banks and credit unions, including Plaintiff, were forced to contact their customers to inform them of the breach, close their credit card accounts, open new credit card accounts, and re-issue their customers new Visa credit cards.

14.    It has been reported that the number of financial institutions that were affected by the data breach disclosed includes more than 150 banks and financial institutions in 40 states.

## IV.
## **STATEMENT OF FACTS**

15. Upon information and belief, Heartland had insufficient systems, policies, and procedures for protecting its system from intrusion and detecting intrusions in a timely manner.

16. Had Heartland instituted reasonable systems, policies and procedures, the intruder would have never been able to compromise Heartland's systems, and Heartland would not have gone months without detecting the compromise.

17. Financial institutions, like Plaintiff, entrust Heartland with the confidential and sensitive financial information of their credit card customers.

18. Financial institutions, like Plaintiff, have reason to expect Heartland to institute reasonable policies in order to protect this confidential and sensitive financial information from misuse.

19. The danger of identity theft and the critical importance of protecting databases containing sensitive financial information is well known, especially since the well-publicized data breach of TJX Companies, Inc., in early 2007, and the similar breach at CardSystems Solutions in mid-2005.

20. Despite these widely-publicized data breaches and the increased industry realization of the need to protect against these breaches and the damage caused by them, Heartland failed to sufficiently protect its database from intrusion, and failed to learn of the intrusion for several months.

21. It is reasonably foreseeable that failure to institute policies to protect confidential financial information will result in financial institutions like the Plaintiff being forced to take immediate and costly steps to protect their customers.

22. Defendant's failure to adequately protect its systems demonstrates Defendant's reckless disregard for the confidentiality and security of Plaintiff's customers' private and sensitive financial information.

23. Defendant caused damages to Plaintiff and similar financial institutions by failing to adequately protect the information within its computer systems.

24. As of March 31, 2009, Plaintiff had total assets of $95 million, loans of $73 million, deposits of $80 million and shareholders' equity of $12 million.

25. Plaintiff offers a broad array of financial services to individuals, businesses, and municipalities in Southwestern Michigan, consisting of Kent, Ottawa, Allegan, Barry, and Ionia Counties.

26. Included among the financial services provided by Plaintiff to its customers is the issuance of Visa credit cards. Plaintiffs' customers used these credit cards issued by Plaintiff continually throughout the class period to make purchases from various merchants throughout the United States.

27. A large percentage of these purchase transactions were processed by Defendant. As a result, Defendant retained confidential financial information regarding Plaintiffs' customers' credit card accounts within its computer systems.

28. As a result of Defendant's actions and inaction, the confidential information of more than 500 of Plaintiff's customers has been compromised. In order to protect these customers from identity theft, Plaintiff must contact each of them to inform them of the

matter, close each of their compromised accounts, and reissue new credit cards to each of them. The total cost to Plaintiff of these necessary steps is estimated at $19,000. Plaintiff also refunded more than $35,000 in fraudulent credit cared charges resulting from the theft of its customers' confidential information. In total, Plaintiff's losses amount to approximately $54,000.

## V.
## CLASS ACTION ALLEGATIONS

29. This action is maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1)-(3).

30. The Class consists of: All banks and other financial institutions whose credit card customers had transactions processed by Heartland on or after January 1, 2008.

31. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. The class includes more than 150 banks and financial institutions in at least 40 states. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Joinder of class members' individual actions is impractical because of the large number of Class members, the geographical diversity of Class members (who reside in at least 40 states throughout the United States), the limited ability of individual class members to institute separate suits, and the general nature of the underlying action and relief sought.

32. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the

Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

    a.    Whether Defendant owes a duty to Plaintiff and Class members to protect the confidentiality of Plaintiff's and Class members' customers' confidential financial information;

    b.    Whether Defendant's conduct and inaction constituted negligence with respect to the confidential financial information of Plaintiff's and Class members' customers;

    c.    Whether Defendant's conduct caused a public disclosure of Plaintiff's and Class members' customers' confidential financial information;

    d.    Whether Plaintiff's and class members' customers' financial information constitutes private information;

    e.    Whether the disclosure of Plaintiff's and class members' customers' financial information would be objectionable to a reasonable person;

    f.    Whether the invasion of Plaintiff's and class members' customers' privacy was proximately caused by Defendant's conduct;

    g.    Whether Defendant had a duty to protect the personal, private and confidential information of Plaintiff's and the Class members' customers;

    h.    Whether Defendant breached its duty to protect the personal, private and confidential information of the Plaintiff's and Class members' customers by failing to act reasonably in storing this confidential information without adequate safeguards;

    i.    Whether it was foreseeable that Defendant's conduct could lead to the injury suffered by Plaintiff and Class members; and

j. Whether Defendant's conduct caused injury and damages to Plaintiff and Class members.

33. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claim is typical of the claims of each Class member. Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

34. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because its interests coincide with, and are not antagonistic to, the interests of the members of the Class it seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action and insurance litigation; and Plaintiff intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and its counsel.

35. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by

Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

36. **Injunctive Relief Appropriate for the Class. FED. R. CIV. P. 23(b)(2).** Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Specifically, Plaintiff seeks injunctive relief in the form of a Court order requiring Defendant to adequately protect the private information of the customers of Plaintiff and the Class members, and (2) fully disclose the Plaintiff and the Class members the extent of information that was compromised to Plaintiff and Class members can take all necessary steps to protect their customers from identity theft.

## VI.
## CAUSE OF ACTION

### FIRST CAUSE OF ACTION - NEGLIGENCE

37. Plaintiffs incorporate all paragraphs of this Complaint into their negligence cause of action.

38. Defendant had a duty to protect the personal, private, and confidential information of Plaintiff's and Class members' customers.

39. Defendant breached its duty to protect this personal, private and confidential information by failing to act reasonably in storing this confidential information without adequate safeguards.

40. It was foreseeable that Defendant's conduct could lead to the injury suffered by Plaintiff and Class members.

41. Defendant's conduct caused injury and damages to Plaintiff and class members.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class members pray for relief as follows:

    a.    For a declaration that Defendant's acts and omissions constitute a willful and intentional failure to establish appropriate safeguards to ensure the security and privacy of Plaintiff's and Class members' customers' financial information;

    b.    For preliminary and permanent injunctive relief enjoining, prohibiting, and preventing Defendant from continuing to operate without appropriate safeguards to ensure that Plaintiff's and Class members' customers' financial information are adequately protected from theft and/or public disclosure;

    c.    For an order certifying the proposed class herein under Federal Rule 23 and appointing Plaintiff and its undersigned counsel of record to represent the Class;

    d.    For a judgment for all damages caused by Defendant's actions;

    e.    For attorneys fees, expenses and costs;

    f.    For pre-judgment and post-judgment interest as provided by law; and

    g.    For such other relief the Court deems just, equitable and proper.

## VIII.
## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated April 28, 2009.

        Respectfully submitted,

By:   /s/ Michael A. Caddell
      Michael A. Caddell
      SBT No. 03576700
      CADDELL & CHAPMAN, P.C.
      1331 Lamar, Suite 1070
      Houston TX 77010-3027
      Telephone: (713) 751-0400
      Facsimile: (713) 751-0906
      csf@caddellchapman.com

*ATTORNEY-IN-CHARGE FOR PLAINTIFF*

OF COUNSEL:

Cynthia B. Chapman
SBT No. 00796339
Cory S. Fein
SBT No. 06879450
CADDELL & CHAPMAN, P.C.
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone: (713) 751-0400
Facsimile: (713) 751-0906
csf@caddellchapman.com

Mitchell A. Toups
SBT No. 20151600
WELLER, GREEN, TOUPS & TERRELL, L.L.P.
Post Office Box 350
Beaumont TX 77704-0350
Telephone: (409) 838-0101
Facsimile: (409) 832-8577